# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TIMOTHY FAIR,

        Plaintiff,

v.                               Case No. 06-C-1072

BASIC METALS, INC.,

        Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On October 13, 2005, Timothy Fair ("Fair"), proceeding pro se, filed a complaint alleging that Basic Metals, Inc., discriminated against him by terminating him because of his race and because of his disability. The Honorable Lynn Adelman granted Fair's motion to proceed in forma pauperis and on December 13, 2006, Basic Metals answered the complaint. The case was then reassigned to this court upon all parties consenting the full jurisdiction of a magistrate judge.

On February 22, 2007, Basic Metals moved for summary judgment. Fair has responded and the defendant has replied. The pleadings on the defendant's motion for summary judgment are closed and the matter is ready for resolution.

### FACTS

Basic Metals argues that Fair's disability claim is barred by res judicata. As for Fair's race discrimination cause of action, Basic Metals argues that summary judgment is appropriate because, based upon the evidence presented during state administrative proceedings, Fair can present no set of facts upon which he could present a successful claim. Because the defendant's arguments for

summary judgment rely upon the facts presented in Fair's claim to the Wisconsin Equal Rights Division ("ERD"), most of the facts set forth below are taken from the filings in that matter, which were provided to this court as exhibits to the affidavit of Jennifer S. Walther in support of the defendant's motion for summary judgment. (Docket No. 27.)

Fair began working for Basic Metals in August of 2003 as a temporary worker assigned through a staffing agency. (Docket No. 27-2 at 3, 4.) When he began, Fair was responsible for pulling coils. (Docket No. 27-2 at 3.) On approximately September 20, 2004, "Jeff," a white male, replaced Fair as coil puller and Fair was assigned to build skids. (Docket No. 27-2 at 3.) Fair alleged that he was subjected to racist name calling "such as you people, janitor, kiss my white ass, and using nigga in a sentence to call me a nigga. And the assistant superviser [sic] Brian standing over my back all the time like I was a slave . . . ." (Docket No. 27-2 at 7.)

Building skids aggravated Fair's sinus condition and on October 8, 2004, Fair told "Dan" that he needed to work somewhere other than building skids. (Docket No. 27-2 at 3.) Fair alleged that Dan told him that he had a new skid builder coming in on Monday, October 11, 2004 and he would not have to build skids anymore. (Docket No. 27-2 at 9.)

On October 11, 2004, Fair had come to work to work as a coil puller and Dan asked him why he was not building skids. (Docket No. 27-2 at 9.) Dan "snatched" Fair's work order out of his hand, told him he was "tired of [Fair's] shit," and told Fair to build skids or "get the hell out of the shop." (Docket No. 27-2 at 3, 9-10.) Fair then said he had to go to the doctor and left work. (Docket No. 27-2 at 10.) Fair's doctor faxed his diagnosis of allergic rhinitis to Basic Metals and on October 12, 2004 and the doctor requested that Fair be assigned to a dust free environment. (Docket No. 27-2 at 3.) On October 12, 2004, Fair received a notice dated October 11, 2004 stating that he had been terminated. (Docket No. 27-2 at 3.)

2

On October 6, 2005, the Equal Rights Division of the Wisconsin Department of Workforce Development determined that there was probable cause to believe that Basic Metals violated the Wisconsin Fair Employment Law by discriminating against Fair in the terms or conditions of employment and terminating Fair because of his race and disability and by refusing to reasonably accommodate his disability. (Docket No. 27-2 at 14.) On March 24, 2006, the ERD held a hearing before an administrative law judge ("ALJ"). (Docket No. 27-3 at 2.) On June 2, 2005, the ALJ issued his decision, concluding that Fair was not disabled within the meaning of the Wisconsin Fair Employment Law and therefore Basic Metals was under no obligation to accommodate Fair; that Fair failed to establish by a preponderance of the evidence that Basic Metals discriminated against Fair in the terms or conditions of employment because of race or disability; and that Basic Metals did not terminate the employment of Fair. (Docket No. 27-3 at 9.)

In his decision, the ALJ pointed to the facts that Basic Metals had prior problems with Fair's work and thus demoted Fair; had problems with Fair failing to come to work and warned him that if he failed to appear again, he would be terminated; Basic Metals suspended Fair for two days after Fair admitted forging a doctor's excuse after Basic Metals questioned the authenticity of the excuse based upon the fact that the excuse contained misspellings and the doctor was a pediatrician who never saw anyone over the age of eighteen; Fair was warned that if he failed to follow the instructions of his supervisors he would be terminated after an incident where Fair refused to clean up an area of the shop; Fair was suspended for three days for again failing to report to work without calling; Fair came to work half-an-hour late on October 11, 2004; and when Fair chose to leave rather than obey his supervisor's order to build skids, Fair quit his job. (Docket No. 27-3 at 6-8.)

On June 21, 2006 Fair appealed the ALJ's decision to the Labor and Industry Review Commission ("LIRC"). (Docket No. 27-3 at 12.) With the exception of correcting a grammatical

error in the findings of fact, the LIRC affirmed the ALJ's decision on December 21, 2006. (Docket No. 27-3 at 17.)

## ANALYSIS

**Issue Preclusion and Plaintiff's Disability Claim**

Under the rule of issue preclusion, a litigant is prohibited from re-litigating an issue that has already been determined by another court. See Migra v. Warren City School Dist. Bd. of Education, 465 U.S. 75, 77 (1984); see also Baker by Thomas v. GMC, 522 U.S. 222, 233 n.5 (1998). When a state administrative agency acts in a judicial capacity and determines factual questions that are properly presented to it, that agency's determination shall have the same preclusive effect in federal court as would a judgment of a state court. Waid v. Merrill Area Pub. Sch., 91 F.3d 857, 866 (7th Cir. 1996) (citing University of Tennessee v. Elliott, 478 U.S. 788, 799 (1986)). In Waid, the Seventh Circuit held that the Wisconsin Equal Rights Division's determination that an employer discriminated against an employee precluded the parties from re-litigating the issue of discrimination in the employee's subsequent federal lawsuit alleging that the employer also violated Title IX of Education Amendments Act of 1972; the only issue left to be resolved in the federal litigation as to the Title IX claim was whether the discrimination was intentional. Id. at 866-67.

In determining whether a decision of the ERD should have preclusive effect, the court should look to factors such as

> (1) the ability of the party against whom preclusion is sought to obtain judicial review of the decision; (2) differences in the quality or extensiveness of the procedures followed by the agency and the court; (3) differences in the standards of proof required by the agency and the court; (4) policy considerations that would make the application of issue preclusion fundamentally unfair.

Id. at 866 (citing Lindas v. Cady, 183 Wis. 2d 547, 515 N.W.2d 458, 463 (1994). "[S]tate proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth

4

Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." Kremer v. Chem. Constr. Corp., 456 U.S. 461, 481 (1982).

A party is able to have a decision of the ERD reviewed by a Wisconsin Circuit Court. Wis. Stat. § 111.395. Fair was informed of this right, (Docket No. 27-3 at 21), and chose not to pursue it, (Docket No. 27 ¶19). It is clear that the quality and extensiveness of the ERD hearing was essentially equivalent to those followed in court. The respondent was required to submit a formal answer to the complaint, (Docket No. 27-3 at 3), both parties had the opportunity to be represented by counsel, to offer evidence in the form of documents or witness testimony, compel the appearance of witnesses by way of subpoenas, (Docket No. 27-3 at 1), to conduct full pre-hearing discovery including depositions, interrogatories, and requests for production, (Docket No. 27-3 at 3), and the ALJ made his determination based upon a burden of proof of a preponderance of the evidence. (Docket No. 27-3 at 9.) Finally, the court is not presented with any such reasons and upon considering the issue is not able to conceive any policy considerations that would make the application of issue preclusion fundamentally unfair. Fair had a full opportunity and incentive to litigate his claim before the ERD and the LIRC. The conclusion that the application of issue preclusion would not be fundamentally unfair and the agency's proceedings are constitutionally sufficient is supported by the fact that the Wisconsin Supreme Court has held that the doctrine of issue preclusion prohibits re-litigation of an issue that was determined in a WFEA complaint to the ERD in a subsequent case brought in state court under § 1983. Lindas v. Cady, 183 Wis. 2d 547, 557, 515 N.W.2d 458, 463 (1994) (relying upon Kremer, 456 U.S. 461).

Thus, it is the conclusion of the court that the decision of the LIRC, which affirmed the decision of the ERD, is entitled to preclusive effect. However, now the court must turn to the

5

question of what issues were resolved by the ERD and the LIRC that should be given preclusive effect.

The ALJ determined that Fair was not disabled under the WFEA. (Docket No. 27-3 at 9.) Although Fair has not alleged a statutory basis for his disability discrimination claim, the court interprets Fair's pro se complaint as arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et. seq. and specifically § 12112(b)(5)(A) by alleging that Basic Metals discriminated against Fair by failing to provide him with a reasonable accommodation as an otherwise qualified individual with a disability. In Fair's prior litigation before the ERD and LIRC, Fair alleged Basic Metals violated the Wisconsin Fair Employment Act ("WFEA"), Wis. Stat. §§ 111.31-111.395, which requires employers to make reasonable accommodations for employees with disabilities, Wis. Stat. § 111.34(1)(b).

An "individual with a disability" is defined under Wisconsin law as an individual who:

(a) Has a physical or mental impairment which makes achievement unusually difficult or limits the capacity to work;
(b) Has a record of such an impairment; or
(c) Is perceived as having such an impairment.

Wis. Stat. § 111.32(8).

Under the ADA, disability means, with respect to an individual—

(a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(b) a record of such an impairment; or
(c) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

The goals of the ADA and the WFEA in regards to the rights and protections of employees with disabilities are essentially the same. However, the definitions of a person with a disability, although very similar between the WFEA and the ADA, are obviously not identical. Under the

6

WFEA, the impairment must affect the individual's "capacity to work," whereas under the ADA the impairment must limit "one or more of the major life activities" of the individual. Further, there is a distinction in the degree of the impairment. Under the WFEA, the impairment must make "achievement unusually difficult or limit[ ]" the [individual's] capacity for work" whereas under the ADA the impairment must "substantially limit" the life activities of the individual.

The differences in the burdens of persuasion between the ADA and the WFEA do not affect the applicability of the doctrine of issue preclusion. Issue preclusion "should not apply where the party against whom preclusion is sought faced a heavier burden of persuasion in the first action compared with the second." Freeman United Coal Mining Co. v. Office of Workers' Compensation Program, 20 F.3d 289, 294 (7th Cir. 1994) (citing Restatement (Second) of Judgments § 28(4) (1982)). In the present case, the burden of persuasion was lower in the first action. In other words, the burden to prove a disability under the WFEA is not as demanding as under the ADA.

"[T]he issue as to which preclusion is sought must be identical to the issue decided in the prior proceeding. Issues of fact may bear the same label without being identical. They are not identical if the legal standards governing their resolution are significantly different." Metromedia Co. v. Fugazy, 983 F.2d 350, 365 (2d Cir. 1992); see also Freeman United Coal Mining Co., 20 F.3d at 294. Here, the defendant argues that the ERD's determination that Fair was not disabled under the WFEA precludes him from arguing here that he is disabled under the ADA. Although both statutes use the term "disability," the legal standards for determining disability differ between the statutes. Thus, the question presented to this court is whether those differences constitute significant differences so as to not bar the application of issue preclusion.

The court has been unable to identify any case wherein the question of what should be the preclusive effect of a prior determination of disability under the WFEA should have to a claim of

7

disability under the ADA was resolved. However, the court has identified two cases that offer some guidance to the court.

In Freeman United Coal Mining Co., the Seventh Circuit held that an individual's denial of benefits under Illinois' Worker's Compensation Act did not preclude him from pursuing a claim under the Black Lung Act because under the Illinois law the individual had to demonstrate that he was unable to work in any job whereas under the Black Lung Act the individual had to demonstrate only that he was unable to work in coal mining or similar work. Id. at 294. Because of the different burdens of persuasion, the court held that the individual's earlier unfavorable worker's compensation claim did not preclude a subsequent claim under the Black Lung Act.

In Crystal Lake Cheese Factory v. Labor & Indus. Review Comm'n, 2003 WI 106, ¶46, 264 Wis. 2d 200, 664 N.W.2d 651, the Wisconsin Supreme Court held that although the WFEA and the ADA were similar statutes, "the statutory language and scheme" differs between the two statutes and therefore Wisconsin courts should interpret the WFEA independent of how other jurisdictions interpreted the ADA. Therefore, Wisconsin courts need not rely upon federal case law regarding what constitutes a reasonable accommodation.

These two cases are distinguishable to the extent that they would imply that issue preclusion is not applicable to the present case. The differences between the two statutes in Freeman United Coal Mining Co. were substantial; the differences between the WFEA and the ADA in regards to the definition of disability are comparatively minor. Second, although the Wisconsin Supreme Court noted that the WFEA and the ADA are distinct statutes and utilize different language because of differing legislative goals, there is no reason to believe that the Wisconsin legislature created distinctions in language in an effort to prevent state determinations of disability from having preclusive effect as to determinations of disability under the ADA. Rather, recognizing that the

differences in language are the result of differing statutory schemes supports the conclusion that the differences are inconsequential to the question of whether issue preclusion should apply as to a determination of disability. The WFEA was designed to deal with the specific issue of discrimination in employment and thus it is logical that it that its definition of disability specifically addressed a person's ability to work. However, the ADA was enacted to deal with the problem of disability discrimination in a wide variety of situations, not just employment, and thus a definition of disability that did not focus only upon work limitations was necessary.

There may be a situation where an individual's capacity to work might not be limited, and thus not disabled under the WFEA, but nonetheless be substantially limited in one or more major life activities, so as to be disabled under the ADA. However, the court need not concern itself with the possible significance of such a hypothetical situation because Fair alleges only a single discrete disability in both the present action and in the state action. Specifically, Fair alleges that he was disabled and entitled to a reasonable accommodation because he suffered an allergic reaction when working in the specific job of skid builder.

In rejecting Fair's claim that he was disabled under the WFEA, the ALJ necessarily found that Fair either did not suffer from allergic reactions or he did suffer from such a condition but not to a degree so as to be sufficiently limiting. Fair can prevail with his present litigation only if it is found that while working as a skid builder he suffered an allergic reaction that was substantially limiting. Such a conclusion would necessarily contradict with the ALJ's determination. Avoiding such contradictory judgments is significant rationale behind the existence of the doctrine of issue preclusion. Since the differences between the WFEA and the ADA are inconsequential to the question of whether the doctrine of issue preclusion should apply to the facts of this case, the court

9

concludes that the doctrine of issue preclusion bars Fair from relitigating his disability claim. Thus, the court shall grant the defendant's motion for summary judgment as to this claim.

**Plaintiff's Title VII Claim**

Turning to Fair's Title VII claim, although the ALJ rejected Fair's claim that he was discriminated against because of his race, this determination is not subject to the doctrine of issue preclusion. <u>Elliot</u>, 487 U.S. at 796. Rather, the defendant argues that the court should grant its motion for summary judgment as to these claims because Fair is seeking to rely upon the same evidence that the ALJ found to be insufficient.

It is clear from Fair's complaint that his primary allegation focuses upon the allegation that the defendant allegedly failed to accommodate his disability. It is only in the section of the complaint titled "Relief You Request" that Fair states, "I want to sue Basic Metal, Inc for racial discrimination to an employee." (Docket No. 1 at 6.) Fair's only allegation in the complaint that may support a claim of racial discrimination is that "Brian Mosley treated me unfairly at work making you do things he made others not do throwing my work orders on the floor just being very rude." (Docket No. 1 at 5.)

The defendant's proposed findings of fact are essentially undisputed. The plaintiff submitted with his response to its motion for summary judgment a copy of the plaintiff's proposed findings of fact that included some handwritten notations. Asterisks are placed next to certain proposed findings although it is unclear the intended significance of these asterisks; perhaps Fair is seeking to emphasize these proposed facts as they tend to be favorable to his position. Other notated changes are of little consequence.

Fair's allegations are unclear as to the nature of the racial discrimination. Fair may be alleging that he was terminated, or subjected to some other adverse employment action, because of his race, or that he was subjected to a hostile work environment. Both are prohibited by Title VII.

There is also an issue concerning the type of conduct that constitutes discrimination. Title VII of the Civil Rights Act of 1964 "affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986). "[O]ccasional or sporadic instances of the use of racial or ethnic slurs do not in and of themselves constitute a violation of Title VII." Nazaire v. Trans World Airlines, Inc., 807 F.2d 1372, 1380 (7th Cir. 1986) (citing Torres v. County of Oakland, 758 F.2d 147, 152 (6th Cir. 1985)); see also Harris v. Forklift Sys., 510 U.S. 17, 21 (1993) ("[M]ere utterance of an epithet which engenders offensive feelings in a employee does not sufficiently affect the conditions of employment to implicate Title VII.") (internal quotation marks omitted) (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). Rather, the question of whether or not any specific conduct amounted to racial discrimination must be determined on a case-by-case basis by evaluating the totality of the circumstances and specifically the quantity and frequency of such incidents. Nazaire, 807 F.2d at 1380-81.

The only factual allegations contained in the record that would arguably support a claim of racial discrimination on account of a hostile work environment are Fair's allegations in his letter to the ERD that he was subjected to racist name calling "such as you people, janitor, kiss my white ass, and using nigga in a sentence to call me a nigga. And the assistant superviser [sic] Brian standing over my back all the time like I was a slave . . . ." (Docket No. 27-2 at 7.)

These allegations are insufficient to permit a reasonable jury to conclude that Fair was subjected to a hostile work environment. Fair fails to place these statements within any time frame.

11

In other words, when were these statements made? Nor does he indicate whether they were one time utterances or repetitive comments. Just as crucial, Fair fails to describe the context within which these statements were made. For example referring to a person as "you people" or "janitor" may have racial undertones, but only depending upon the context, which Fair fails to provide. As for the expression, "kiss my white ass," depending on the circumstances in which it was said, it may or may not be a racial insult. Fair simply does not provide such additional facts here and thus the court is unable to conclude that this statement, either alone or in combination with the other allegedly insulting conduct, constituted racial discrimination.

The alleged use of the word "nigga" certainly has racial overtones, but Fair fails to indicate who made the statement, how often it was made, and the attendant circumstances. These deficiencies alone cause the court to conclude that he has failed to present sufficient evidence that would even permit this claim to be considered by a jury. Parenthetically, to illustrate where context is important in analyzing the use of certain words, much as been written about the use of the word "nigga." As can be seen, the word is not necessarily a universally insulting word. "Currently some people insist upon distinguishing nigger—which they see as exclusively an insult—from nigga, which they view as a term capable of signaling friendly salutation." Randall Kennedy, Nigger: The Strange Career of a Troublesome Word, (excerpted at Washingtonpost.com, http://www.washingtonpost.com/wp-srv/style/longterm/books/chap1/nigger.htm); see also http://en.wikipedia.org/wiki/Nigga; Dambrot v. Central Mich. Univ., 839 F. Supp. 477 (E.D. Mich. 1993) (noting confusion regarding whether "nigger" or "nigga" was said in a deposition and noting that the pronunciation "nigga" "carries with it a much different, and noninsulting, connotation especially when used by blacks themselves.") However, the differentiation between "nigga" and "nigger" is not universally accepted, see, e.g., Freeman v. Spencer Gifts, Inc., 333 F. Supp. 2d

1114, 1118 (D. Kan. 2004) (plaintiff in Title VII action alleged she was subjected to a hostile work environment because, in part, music by the rap group Niggas With Attitude that included the word "nigga," was played during work trips; when plaintiff's supervisor emphasized that the word was "nigga" and not "nigger" in response to plaintiff's objection to the song, plaintiff responded either word was offensive), and thus the court shall assume that Fair regarded the use of the word "nigga" as equivalent to the use of the word "nigger."

While the foregoing is certainly interesting, as stated earlier, Fair's allegation that he was called a "nigga" is insufficient to avoid the defendant's motion for summary judgment, because Fair provides no further information as to the context or the pervasiveness of this epithet. The fact that an epithet was uttered is insufficient to constitute a hostile work environment. See Nazaire, 807 F.2d at 1380; Harris, 510 U.S. at 21.

Finally, as for Fair's allegation that he was subjected to racial discrimination because his supervisor watched over him like he "was a slave," Fair's effort to analogize the level of supervision he received to slavery is insufficient to constitute discrimination. Regardless of whether this is an accurate characterization, analogical similarity to conduct that may be discriminatory in character is not prohibited under Title VII. Title VII prohibits actual discrimination, not conduct that merely can be analogized to discrimination. Thus, the court finds that Fair has failed to present sufficient evidence that would permit a reasonable jury to conclude that Fair was subjected to racial discrimination in the form of a hostile work environment, and therefore the defendant's motion for summary judgment shall be granted as to this claim.

As for Fair's claim that the defendant acted with a racially discriminatory reason in mind when it allegedly fired Fair,

> [a] plaintiff can avoid summary judgment in two ways: the burden-shifting method first established in Connor v. Coleman, 441 U.S. 792, 802 (1973), often

13

called the "indirect" method of proof, or the conventional method of presenting a "convincing mosaic" of direct or circumstantial evidence that could permit a reasonable jury to conclude that the employer acted with discriminatory intent, often called the "direct" method of proof. Jordan [v. City of Gary], 396 F.3d [825], 831-33 [(7th Cir. 2005)].

Brewer v. Bd. of Trs., 479 F.3d 908, 915 (7th Cir. 2007) (footnote omitted).

> Under the indirect method of proof, the defendant seeking summary judgment must offer a legitimate, nondiscriminatory reason for its actions once the plaintiff makes out a prima facie case of discrimination. Burks v. Wis. Dept. of Transp., 464 F.3d 744, 750-51 (7th Cir. 2006). To make out a prima facie case, [the plaintiff] must show that (1) he was a member of a protected class, (2) he was qualified for his position at the [employer] and met the [employer's] legitimate expectations, (3) he suffered an adverse employment action (that is, an unfavorable material change in the terms, conditions, or privileges of his employment), and (4) similarly-situated non-class members were treated more favorably than he. Id. If a prima facie case has been shown and the defendant offers a nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to demonstrate that the suggested reason is mere pretext for discrimination. Id.

Brewer, 479 F.3d at 915.

Fair has failed to set forth a prima facie case. Specifically, Fair has failed to demonstrate that he met the legitimate expectations of the defendant. In fact, it appears that the opposite was true. Regardless of whether or not Fair was previously told he would not have to work as a skid builder any more, it is undisputed that Fair was later told to work as a skid builder or get out of the shop. Fair refused to perform the job he was ordered to perform and instead chose to leave. Based upon this evidence, the ALJ concluded that Fair was not fired but rather quit his job, and Fair presents no evidence that would permit a jury to conclude otherwise.

However, proceeding on the basis that Fair could establish a prima facie case, the court would nonetheless be required to grant the defendant's motion for summary judgment. Even if this court were to accept that Fair was terminated rather than voluntarily quit his job, the defendant has demonstrated a non-discriminatory reason for its action, specifically Fair's refusal to work in his

14

assigned job. The defendant has further presented legitimate non-discriminatory reasons for its other actions that may be regarded as adverse employment actions. These legitimate non-discriminatory reasons include Fair submitting a forged doctor's excuse in an effort to explain an absence from work, a noticeable slowing of production in the job where Fair was assigned, repeated failures to show up for work or to even call to inform the defendant he was not able to make it in, and failure to obey a direct order from a supervisor to clean an area of the shop. Although Fair was demoted, transferred, and suspended for these alleged actions, Fair has not offered any evidence to suggest that these stated reasons were merely pretexts for racial discrimination.

> Fair further fails to demonstrate racial discrimination by way of the direct method of proof.
>
> To prove discrimination via direct evidence "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000). It should not be surprising that in today's politically correct workplace environment such admissions are rarely, if ever, made or encountered. See id. Therefore, a plaintiff may also "prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decision-maker.'" Rhodes v. Ill. Dept. of Transp., 359 F.3d 498, 504 (7th Cir. 2004); Troupe v. May Dep't Stores Co., 20 F.3d 734, 737 (7th Cir. 1994). Nonetheless, under the direct method, circumstantial evidence "must point directly to a discriminatory reason for the employer's action." Id. (quoting Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 939 (7th Cir. 2003)).

Jordan, 396 F.3d at 832.

There is no allegation that the decision maker admitted that any decision to take an adverse employment action against Fair was motivated by racial animus. Further, Fair fails to present a "convincing mosaic" that would permit a jury to conclude that he was terminated because of racial animus. It is undisputed that Fair was ordered to work as a skid builder, an order he refused to comply with, and instead chose to leave work, an action that the defendant took as Fair quitting his

15

job. All other adverse employment actions that Fair suffered were similarly directly preceded by Fair allegedly failing to comply with the ordinary expectations of employment.

Therefore, because Fair's ADA claim is precluded by the adverse determination by the ERD, which was affirmed by the LIRC, and because Fair fails to present sufficient evidence that would permit a reasonable jury to conclude that the defendant discriminated against him because of his race in violation of Title VII, the court shall grant the defendant's motion for summary judgment.

**IT IS THEREFORE ORDERED** that the defendant's motion for summary judgment is **granted**. Fair's complaint and this action are hereby **dismissed** with prejudice. The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 26th day of June, 2007.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge